IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ABDOU BARROW on behalf of      Civil Action No._____
himself and others similarly situated,

     Plaintiffs,

**COMPLAINT -- CLASS ACTION**

v.

BERT BRANTLEY, in his official
capacity as Commissioner of the
Georgia Department of Driver
Services,

     Defendant.

## COMPLAINT FOR DECLARATORY AND INJUNTIVE RELIEF

## NATURE OF THE ACTION

1.     This action challenges O.C.G.A. § 40-5-50 as facially

unconstitutional as it violates the Plaintiffs' Fifth Amendment Right to

*Notice and Opportunity to be Heard* by allowing Georgia Department of

Driver Services ("DDS") to unlawfully take driver's licenses away from

Plaintiffs without first affording them notice and a hearing on the matter.

2.     This action challenges DDS policy to invoke its authority to use

O.C.G.A. § 40-5-50 as unconstitutional as it violates the Plaintiffs' Fifth

Amendment Right to *notice and opportunity to be heard* by allowing

Georgia Department of Driver Services ("DDS") to unlawfully take driver's

licenses away from Plaintiff without first affording him a hearing on the matter.

3.     This action challenges DDS failure to issue written articulated decisions upon cancellation of a driver's license as this violates Plaintiff's Fifth Amendment Right to *notice* and *opportunity to be heard on the matter*.

4.     The individually named Plaintiff brings this action on behalf of himself and a class of all others similarly situated to obtain preliminary and permanent injunctive relief and a declaration that O.C.G.A. § 40-5-50 and DDS' policy and manner of use of O.C.G.A. § 40-5-50 violate the Fifth Amendment and Fourteenth Amendment.

5.     O.C.G.A. § 40-5-50 and DDS's policy and manner of use of the cancellation statute is subjecting thousands of Georgians, including Plaintiff and members of the proposed class, to irreparable harm by depriving them of vital ability to drive without notice of the basis of the denial.  DDS policy sharply curtails the ability of the Plaintiff and class members to drive their children to school and medical appointments, to attend religious services, to seek and maintain employment and to otherwise participate in the life of the communities in which they reside.

6.     O.C.G.A. § 40-5-50 and DDS's policy and manner of use of the cancellation statute subjects lawful holder's of Georgia Driver's licenses to

2

arrest without notice of the cancellation of their driver's license.  DDS mails notice of cancellation to the last address they have on file. O.C.G.A. § 40-5-33 requires a holder of a Georgia driver's license to have updated their new address within sixty (60) days of changing their residential address.

If individuals affected by this policy do drive prior to receiving notice from DDS, they are subject to criminal prosecution for driving without a Georgia license.  Penalties range from a minimum of $500.00 fine and from two days to up to a year imprisonment for the first offense, with penalties rising to a maximum of five years in prison and a $5000.00 fine for the fourth (or subsequent to the fourth) offense.  See Ga. Code Ann. §§ 40-5-20(a), 40-5-121(a). A conviction for driving without a Georgia license could also lead to the suspension of driving privileges in the future, *id.* O.C.G.A. § 40-5-121(b)(1), and could negatively impact the future efforts to obtain immigration relief.   *See*, e.g., 8 U.S.C. § 1182(a)(2)(B) (making inadmissible certain aliens convicted of multiple offenses).

7. Plaintiff and members of the proposed class will continue to suffer serious and irreparable harm if DDS' policy is not enjoined.

8. O.C.G.A. § 40-5-50 and DDS's policy and manner of use of O.C.G.A. § 40-5-50 subjects lawful holder's of Georgia Driver's licenses to Extra-Legal action on the part of the state as it allows them to unlawfully

3

take a property right without having to articulate a basis for agency action. This facilitates lawless action that DDS has done in the past and is now doing to the Plaintiff.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the United States Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 because this action seeks to redress the deprivation, under color of state law, of the Plaintiff and class members' civil rights and to secure equitable or other relief for the violation of those rights.

10.     Plaintiff seeks declaratory, injunctive and other appropriate relief, pursuant to 28 U.S.C. §§ 2201 and 2202; Federal Rules of Civil Procedure 23, 57, and 65; and 42 U.S.C. § 1983.

11.     Venue is proper under 28 U.S.C. § 1391 (b) and Local Rule 3.1 Defendant is sued in his official capacity and his office resides within this District and the Division.  The DDS offices where the representative Plaintiff applied for his driver's license is located within this Division, and all such offices are located within this District.  DDS is refusing to issue a driver's license to Plaintiff pursuant to a policy that was generated and is

4

administered by DDS' headquarters in Conyers, Georgia, which is located within this Division.

## PARTIES

### Plaintiffs

12.    Plaintiff **Abdou Barrow** was born in The Gambia and is not a citizen.  He currently resides in Snellville, Georgia.

13.    Barrow has an applications for asylum, withholding and Convention Against Torture ("CAT") pending before the Immigration Court in Atlanta, Georgia.  The United States Citizenship and Immigration Services ("USCIS") granted Barrow an Employment Authorization Document ("EAD") showing his federal classification as a non-citizen with an application for asylum pursuant to 8 C.F.R. § 274a.12(c)(8) (2016).  The EAD authorizes him to work in the United States and he is eligible to renew it as long as his application for asylum is pending.  Barrow cannot prove to DDS' satisfaction that he is entitled to a license but DDS has not articulated a reason for the denial.

14.    DDS had granted Barrow a driver's license in previous years based on his pending application for asylum.  In 2010, DDS stated that Barrow did not have status.  DDS has never provided a written decision nor any other evidence to support its verbal statement.

15.    In late 2013, Barrow applied for a license at a DDS Field Office. The field office denied Barrow a license and told him that he needed an I-94 card. USCIS would not issue a person an I-94 card on the basis of having a pending application for asylum.

16.    On December 2, 2013, within thirty days of the DDS Field Office refusal to issue a license, Barrow filed an administrative appeal in the Fulton Superior Court pursuant to O.C.G.A. § 40-5-66. The trial court issued an order stating that it did not have jurisdiction to review a DDS decision to deny his application for a license. Mr. Barrow filed to the Georgia Court of Appeals, which affirmed the trial court's decision. Barrow filed an appeal at the Georgia Supreme Court, which stated the Superior Court did in fact have jurisdiction to review the DDS decision. On remand this case is still pending before the Fulton Superior Court. To date DDS has not stated the basis for its decision to not issue a license to Mr. Barrow outside of inconsistent one line vague statements that appear to have no basis in federal or Georgia law.

17.    As a result of DDS' decision to deny him a license, Barrow has experienced significant disruption to his ability to perform in his position as a General Manager for Electronic Maintenance Associates. Barrow is unable to meet all the needs to his employer, which has affected his income.

Barrow must depend on his spouse or in the alternative employ taxi services
to perform his work, shopping for groceries and transporting his minor child
to his various activities, schooling and medical appointments.

18.     Defendant Bert Brantley is the Commissioner of the Georgia
Department of Driver Services ("DDS").  Georgia law provides that DDS
"shall be under the direction, control, and management of the Board of
Driver Services and the commissioner of driver services."  Ga. Code Ann. §
40-16-3(a). Georgia law further provides that "the commissioner shall be the
chief executive officer of the department, subject to the policies established
by the board." *Id*. O.C.G.A. § 40-16-3(e).  As such, Defendant Brantley is
responsible for the enforcement of DDS policy in Georgia and is an
appropriate defendant in this case.  Defendant Brantley is used in his official
capacity.

## LEGAL FRAMEWORK

### Federal Law Governing Immigration Classification and Issuance of Driver's Licenses to Non-Citizens

19.     The federal government has exclusive power to determine and
regulate the immigration status of non-citizens in the United States.  The
U.S. Constitution grants the federal government the power to "establish an
uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to
"regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3.

20.     Congress has created a comprehensive system of federal laws regulating immigration and enforcing immigration law through the Immigration and Nationality Act ("INA"). See 8 U.S.C. § 1101 *et seq.* (2016). The INA contains complex and exclusive procedures for determining immigration and citizenship status. The federal government has established specialized agencies and courts to determine the immigration status of individuals, to enforce immigration law, and to effectuate immigration policy. See 8 U.S.C. §§ 1101(b)(4), 1229a, 1551 *et seq.* (2016); 8 C.F.R. §§ 2.1, 1003.1 *et seq.* (2016).

21.     The extensive federal statutory and regulatory scheme governing immigration classifications leaves no room for supplemental state laws or policies that classify non-citizens. State have no authority to create immigration classifications that do not exist in federal law, nor to assess the legality of a non-citizen's presence or status in the United States separately from the federal government.

22.     Under the INA, a non-citizen's immigration status may be subject to change over time. For example, a non-citizen who enters the United States with authorization –e.g., with tourist visa--- might remain in the country past his period of authorized stay. However, he may later acquire lawful status through filing an application before the Immigration

8

Judge, may later lose that status upon the judge denying their application, later have their case re-open—therefore regaining lawful status in the US, then later may enjoy the status of an asylee upon having his application approved, than later the same person may be granted lawful permanent resident status, and at a later date granted citizenship by way of applying for naturalization. INA §§ 245, 208 and 316.

23.   With the federal REAL ID Act, Congress set standards for the issuance of state driver's licenses that federal agencies will accept for official purposes, such as accessing federal facilities and boarding federally regulated aircraft. Pub. L. No. 109-13, § 201(3), 119 Stat. 231, 313 (codified at 49 U.S.C. § 30301 note).

24.   The REAL ID Act provides that the Secretary of Homeland Security shall determine whether a state is meeting the requirements of the REAL ID Act based on certifications made by the state to the Secretary of Homeland Security. Pub. L. No. 109-13, § 202(a)(2). A state may receive federal grant money to assist it in complying with the Act. *Id.* §204(a).

25.   Georgia along with at least 21 other states and the District of Columbia, has agreed to comply with REAL ID, thereby ensuring that its

residents may use their Georgia driver's licenses to enter federal facilities and board commercial domestic flights.[1]

26.   To issue a REAL ID-compliant driver's license to an applicant, a state must require documentary evidence that the applicant has "lawful status," as defined by the REAL ID Act. *Id.* § 202(c)(2)(B).

27.   The Real ID Act established nine categories of persons who have "lawful status," as required to receive a REAL ID-complaint driver's license: (1) citizens or nationals of the United States; (2) aliens lawfully admitted for permanent or temporary residence in the United States; (3) aliens with conditional permanent resident status in the United States; (4) aliens who have an approved application for asylum in the United States or who entered the United States in refugee states; (5) aliens with a valid, unexpired nonimmigrant visa or nonimmigrant visa status for entry into the United States; (6) aliens with a pending application for asylum in the United States; (7) aliens with a pending or approved application for temporary protected status in the United States; (8) aliens with approved deferred action status; and (9) aliens with a pending application for adjustment of status to that of an alien lawfully admitted for permanent residence in the

---

[1] Press Release, Gov. Nathan Deal, Office of the Governor, Homeland Security Determines Georgia Complaint with Real ID (Dec. 21, 2012),

United States or conditional permanent resident status in the United States. Pub. L. No. 109-13, § 202(c)(2)(B), 119 Stat, 231, 313 (codified at 49 U.S.C. § 30301 note); 6 C.F.R. § 37.3 (2016).

28.   A person who is not a U.S. citizen and is physically present in the Untied States may be eligible for asylee status based on specific criteria. This application I-589 titled Application for Asylum and for Withholding of Removal can be filed affirmatively with USCIS or if in removal proceedings defensively with the Immigration Judge.

29.   A person who has filed an I-589 Application for Asylum and for Withholding of Removal may apply for USCIS authorization to work lawfully in the United States.  8 C.F.R. § 274a.12.(c)(8) (2016).  If USCIS grants work authorization, it issues that person an Employment Authorization Document ("EAD").  The EAD is coded to show that its holder is in category (c)(8) (shorthand for 8 C.F.R. § 274a.12(c)(8)), a category comprised of people with pending I-589 Applications for Asylum .

30.   Under the REAL ID Act, if a person presents evidence of a pending application for asylum as the basis for the issuance of a driver's license, then the state may issue a temporary driver's license.  Pub. L. No. 109-13, § 202(c)(2)(C)(i), (ii).  A temporary driver's license is valid only during the period of time of the applicant's authorized stay in the United

11

States or, if there is no definite end to the period of authorized stay, a period of one year, *See id.*

31.     To be eligible for a REAL ID-compliant driver's license, a person must present documents demonstrating identity and lawful status in the United States, as determined by USCIS. Pub. L. No. 109-13, § 202(c). An EAD is evidence of identity under federal regulations implementing the REAL ID Act. 6 C.F.R. § 37.11(c)(1)(v) (2016). If a person presents an EAD as evidence of identity, he or she must present a second document, "issued by DHS [the Department of Homeland Security] or other Federal agencies demonstrating lawful status as determined by USCIS." 6 C.F.R. § 37.11(g)(2) (2016).

32.     An applicant can demonstrate that he has a pending application for asylum by showing any relevant federal documents including Immigration Court orders, Form I-797C Notice of Action issued by USCIS and USCIS Notice of Fingerprint Appointment. 6 C.F.R. 37.11(g).

33.     To issue REAL ID-compliant licenses, states must enter into memoranda of understanding with the Secretary of Homeland Security to routinely use the Systematic Alien Verification for Entitlements ("SAVE") system, established by USCIS, to "verify the legal presence status of a

person, other than a United States citizen, applying for a driver's license or identification card." Pub. L. No. 109-13, § 202(c)(3)(C).

34.     If DDS is unable to verify the "lawful status" of an applicant for a license with the automated USCIS Save Program, DDS is required to second take a second step to verify the lawful status of the applicant.  If the applicant's status has still not been verified then they must initiate a third step with USCIS.[2]

### Georgia Law and Policy Governing Issuance of Licenses to Non-Citizens

35.     Georgia law provides that DDS "shall, upon payment of the required fee, issue to every applicant qualifying therefor a driver's license indicating the type or general class of vehicles the licensee may drive …." Ga. Code Ann. § 40-5-28.

36.     Georgia law provides that a person "may be issued a temporary [driver's] license" if he or she "presents in person valid documentary evidence of" federal documentation verified by the United States Department of Homeland Security to be valid documentary evidence of lawful presence in the United States under federal immigration law" or

---

[2] *See* https://save.uscis.gov/web/media/resourcescontents/saveprogramguide.pdf

"[v]erification of lawful presence as provided by Code Section 40-5-21.2."[3]

Ga. Code Ann. §40-5-21.1(a)(7).

37. Georgia law provides that a person who provides evidence of a

pending application for asylum may be issued a temporary license.  Ga.

Code Ann. § 40-5-21.1(a)(2)

38.  Under Georgia law, a temporary license issued by DDS is "valid

only during the period of time of the applicant's authorized stay in the

United States or five years, which ever occurs first." Ga. Code Ann. § 40-5-

21.1(a).

39.  O.C.G.A. § 40-5-50 states:

> The department is authorized to cancel any driver's license or
> personal identification card issued by the department pursuant
> to Code Section 40-5-100 upon determining that the holder of
> such license or identification card was not entitled to the
> issuance thereof under this chapter or failed to give the required
> or correct information in the application for such license or
> identification card.

---

[3] Section 40-5-21.2 of the Georgia Code requires DDS to "attempt to confirm through the USCIS SAVE Program that the applicant is lawfully present in the United States." Ga. Code Ann. § 40-5-21.2(b)(1).  If the SAVE Program does not provide sufficient information to make a determination, DDS is "authorized to accept verbal or e-mail confirmation of the legal status of the applicant from the Department of Homeland Security." *Id*. Ga. Code Ann. § 40-5-21.2(b)(2).  This is the corresponding state law to the 3 step verification process outlined in the USCIS SAVE Guide.

## FACTS

40.    Plaintiff Barrow lives in Snellville, Georgia.

41.    Barrow, who is a citizen of The Gambia, entered the United States in 1992 on a F-1 visa.  Barrow attended Virginia Tech and DeVry University and obtained his B.S. degree in Electrical Engineering.  Barrow then briefly attended the University of New Mexico Masters of Engineering Program.

42.    While attending school in the United States Barrow wrote several articles that were published in The Gambia newspapers The Observer and Foroya that were critical of the President Yaya Jammeh.  The human rights abuses by President Jammeh that include incarceration without Due Process, disappearances and executions is well documented.

43.    Barrow cousin, Omar Barrow, was murdered by the Security Forces during a student protest in the year 2000 and is documented in U.S. State Department Country Reports on Human Rights Practices for The Gambia of 2001.  Barrow's brother, Yankuba Barrow, fled to Italy in 2014 and was later granted asylum.  Barrow's other brother fled to Senegal out of fear for his safety in 2016.

44.    Barrow applied for asylum.

45. Barrow was ordered removed in absentia from the Albuquerque, New Mexico Immigration Court in 1999. In 2009 his case was reopened because the court failed to give notice of his removal hearing. Barrow's asylum application was revived upon case removal proceedings be reopened.

46. Barrow has an EAD card issued by USCIS, which allows him to work in the United States. Barrow's EAD reflects that he is in category (c)(8), indicating that he has a pending application for asylum. In previous years, Barrow has received EADs from USCIS based on his pending application for asylum.

47. In the Fall of 2013, Barrow applied for and was refused a driver's license by DDS. In order to prove his lawful status Barrow presented to DDS multiple immigration court orders, an EAD and a USCIS Notice of Fingerprint Appointment. After multiple trips to DDS Field Offices and correspondence between counsel for Barrow and General Counsel, Barrow was told he would not be issued a license because he did not have "lawful presence." DDS has never provided a basis for how it reached its determination nor evidence that it followed the three step process mandated under both Georgia and federal law and under its Memorandum of Understanding it entered with DHS-USCIS.

48.    On December 2, 2013, Barrow filed an administrative appeal in the Fulton Superior Court.  DDS refused to issue a decision after multiple requests by counsel.  The Superior Court found that it did not have jurisdiction for the appeal.  This decision was affirmed by the Georgia Court of Appeals but overturned by the Georgia Supreme Court.  This appeal is still pending after three years.  To date, DDS has failed to grant Barrow a license nor state a basis for its decision to refuse Barrow a license.

49.    It is DDS policy to not issue a written decision upon the denying a non-citizen a driver's license.  In *Ochoa-Chavez v. Mikell*, 2015-cv-267634 (Ga. Super. Ct. April 19, 2016), DDS refused to issue a written decision to the applicant for a license for fourteen (14) months.  On January 2, 2016, one year after application, DDS issued a decision only after the Honorable Craig L. Schwall of the Fulton Superior Court ordered DDS to issue a decision.

In *Villegas-Torres v. Mikell*, 2015-cv-268588 (Ga. Super. Ct. Apr. 20, 2016), DDS refused to issue an articulated reason for the denial of a license to the applicant for five (5) months.  Only after the Superior Court Judge David Irwin, ordered General Counsel for DDS to appear before the Court for cross-examination was the applicant able to get DDS to articulates its position for the denial.

17

In *Ahad v. Brantley*, 2016-cv-274835 (Ga. Super. Ct.) the applicant applied for a driver's license over one (1) year ago and his case is still pending in the Fulton Superior Court without a basis for the denial being provided by DDS.

50.     O.C.G.A. § 40-5-50 allows for DDS to cancel a driver's license without forcing the government to articulate its decision.  The statute has resulted in Extra-Legal Government Action that has violated the constitutional rights of thousands of non-citizens because DDS has continuously acted without accountability to the Georgia or federal law. This is exemplified in this case where Barrow has been unlawfully denied a license for the past seven (7) years.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this action on behalf of themselves and all those similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1)(A) and 23(b)(2).

52.     The class is defined as:

All individuals that are not U.S. citizens who had previously been issued a driver's license by DDS; DDS cancelled the license pursuant to O.C.G.A. § 40-5-50; and DDS failed to issue a written articulated decision explaining

the basis of the cancellation and failed to afford the non-citizen a **hearing prior to cancelling the license**.

53.    The precise size of the class is unknown, but it likely encompasses well over a thousand people.  In 2016 DDS settled a case with a class of non-citizens that had been unlawfully denied driver's licenses in violation of Equal Protection, the Federal Supremacy Clause and the plain language of the Georgia statutory law. *Das v. Brantly*, 1:16-cv-01367-LMM (N.D.Ga. 2016); *see also Ochoa-Chavez v. Mikell*, 2015-cv-267634 (Ga. Super. Ct. April 19, 2016); *Villegas-Torres v. Mikell*, 2015-cv-268588 (Ga. Super. Ct. Apr. 20, 2016).  That class was comprised of thousands of people many of which had their license cancelled pursuant to O.C.G.A. § 40-5-50.

54.    Questions of law and fact are common to the class, including (1) whether the O.C.G.A. § 40-5-50 violates members right to Notice and Opportunity to be heard in violation of their the Fifth Amendment Right to Due Process; (2) whether Defendant's policy of cancelling licenses without first providing a hearing violates the members right to Fifth Amendment Due Process; (3) whether Defendant's policy of not issuing written decisions explaining the basis of the member's cancellation violates Fifth Amendment Right to Due Process.

55.    The Plaintiff's claims are typical of the class.  Defendant has a policy of cancelling non-citizen's licenses without first providing them with notice of the decision, without providing a basis for the decision and without providing them with hearing prior to cancelling the license.

56.    Plaintiff will fairly and adequately represent the interests of all members of the proposed class because he seeks relief on behalf of the class as a whole and has no interest antagonistic to other members of the class. Plaintiff, like members of the proposed class, cannot obtain driver's licenses as a result of Defendant's unlawful policy of not stating the basis for such denials that is facilitated in part by the language of O.C.G.A. § 40-5-50.  As a result Plaintiff seeks to have the policy declared unlawful and O.C.G.A. § 40-5-50 struck as unconstitutional so that the Plaintiff and class members will receive written articulated decisions if their licenses are cancelled, a hearing prior to the cancellation.  This will have the effect of curbing DDS' Extra-Legal actions that have plagued the agency and non-citizens will be issued the driver's licenses they are entitled to under Georgia and federal law.

57.    Plaintiff is fairly and adequately represented by his counsel. The Law Office of Justin W. Chaney, LLC focuses on immigration law, and has had substantial experience representing individual non-citizens in

challenging DDS' refusal to issue driver's licenses. This experience includes the successful representation in the Class Action *Das v. Bert Brantly*, 1:16-cv-01367-LMM (N.D.Ga. 2016).

58.     Under state law, if any person believes that DDS is wrongfully cancelling his driver's license, has been denied a hearing prior to cancellation and/or wrongfully withholding the basis of the denial that person has a right to seek review of that decision in the superior court for the County in which he resides or in Fulton County. *See* Ga. Code Ann. § 40-5-66(a). Prosecution of separate actions by aggrieved class members within various jurisdictions throughout Georgia thus creates a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant in the future.

59.     Defendant has acted and will act on grounds generally applicable to the class in cancelling licenses of members of the class without providing notice prior to the cancellation and without articulating basis for the agency decision. Therefore, final relief declaring this policy unlawful and striking O.C.G.A. 40-5-50 as unconstitutional and enjoining its use and ordering DDS to articulate the basis for denial prior to cancellation is requested.

## CAUSE OF ACTION

## COUNT ONE

## FOURTEENTH AMENDMENT & FIFTH AMENDMENT DUE PROCESS; 42 U.S.C. § 1983

60.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

61.     Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 for violation of the Fifth Amendment Right to Due Process as applied to the state of Georgia by way of the Fourteenth Amendment to the U.S. Constitution.

62.     The Fourteenth Amendment of the United States Constitution provides: "No State shall . . . deprive any person of life, liberty or property, without due process of law."

63.     Defendant at its disposal O.C.G.A. § 40-5-50 that allows it to cancel a license without first providing the licensee Notice and Opportunity to heard on the matter by way of a hearing prior to the license being cancelled.  Defendant has used this statutory authority to cancel non-citizen licenses.  Therefore, final relief declaring this policy unlawful, striking the Cancellation statute as unconstitutional and mandating that Defendant issue

written articulated decisions that state the basis for the denial and requiring

hearing prior to the license being cancelled is appropriate with respect to the

class as a whole.

## PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, Plaintiff requests that the Court:

a. Assume jurisdiction over this matter;

b. Certify this matter as a class action pursuant to Rules 23(a) and 23(b)(1)(A) and (b)(2) of the Federal Rules of Civil Procedure;

c. Appoint counsel as class counsel pursuant to Rule 23(g);

d. Declare that DDS' policy of cancelling driver's licenses without issuing a written decision that articulates the basis of the cancellation is a violation of Fifth Amendment Right to Due Process that requires notice and an opportunity to be heard on the matter by way of the Fourteenth Amendment to the Untied States Constitution;

e. Declare O.C.G.A. § 40-5-50 cancellation statute that allows for cancelling a license without first providing notice and an opportunity to be heard on the matter in violation of the Fourteenth Amendment to the Untied States Constitution;

f. Issue a preliminary injunction, later to be made permanent, enjoining Defendant from directing or allowing state officials to cancel driver's

licenses to individuals without first providing a written decision articulating a basis and providing an opportunity for a hearing on the matter prior to the cancellation.

g. Grant Plaintiff his reasonable costs of suit and reasonable attorney's fees and other expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law.

h. Grant such other relief as this Court may deem just and proper.

Respectfully submitted this 18th day of January, 2017.[4]

/s/*Justin W. Chaney*
Justin W. Chaney (GA Bar No. 120681)
JUSTIN W. CHANEY, LLC
1801 Peachtree Street, N.W.
Suite 110
Atlanta, Georgia 30309
Tel: (404) 475-1616
Fax: (678) 686-8473
jchaney@lawchaney.com

---

[4] Counsel certifies that this document has been prepared in Times New Roman font and 14 point, in accordance with LR 5.1, NDGa.